UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 23-cr-362 (TNM) |
| | : | |
| JOSHUA COKER, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence defendant Joshua Coker to seven months of incarceration, followed by one year of supervised release, 60 hours of community service, and consistent with the plea agreement in this case, $500 in restitution. The government's recommendation is at the midpoint of the 4-10 month Sentencing Guidelines range that applies in this case.

**I.      Introduction**

Coker, a 46-year-old employee at an auto manufacturing plant in Ohio, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.8 million dollars in losses.

Coker pleaded guilty to one count of violating 18 U.S.C. § 1752(a)(2), Disorderly and Disruptive Conduct in a Restricted Building or Grounds. As explained herein, a sentence of incarceration is appropriate in this case because Coker: (1) was one of the first rioters to arrive at

1

the U.S. Capitol building while it was under siege, and he stood just feet away as other rioters broke windows and created the first breaches into the building; (2) entered an extremely sensitive space, the Senate Gallery, at a time when lawmakers should have been certifying the Electoral College votes; and (3) entered the U.S. Capitol wearing identity concealing clothing, reflecting Coker's knowledge that his actions were unlawful. Coker is also a convicted felon with an extended criminal history. During the execution of a search warrant at Coker's home that was authorized in furtherance of this investigation, law enforcement discovered ammunition and multiple firearms. Coker was subsequently indicted in the Northern District of Ohio with Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). Coker's history of criminal activity– including his actions before and after January 6 – demonstrate a disturbing pattern and an unwillingness to abide by the law.

The Court must also consider that Coker's conduct on January 6, like the conduct of hundreds of other rioters, took place in the context of a large and violent riot that relied on numbers to overwhelm police officers who were trying to prevent a breach of the U.S. Capitol building and disrupt the proceedings. Here, the facts and circumstances support a sentence of seven months of incarceration, followed by one year of supervised release.

**II.  Factual and Procedural Background**

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* Statement of Offense ¶¶ 1–7.

*Coker's Role in the January 6, 2021 Attack on the Capitol*

Coker wanted to be in Washington, D.C. on January 6, 2021 to attend the "Stop the Steal" rally. Just after midnight on January 5, 2021, Coker texted a friend that if he still had time available

under the Family Medical Leave Act, he would get out of work and go to D.C. "Might still have FMLA. If I do I'm headed to DC." Exploiting the FMLA leave available to him, later that day Coker texted that same friend that he was "DC bound." His friend responded, "Hell ya. I wish I could go. Be safe shits already getting crazy." Coker responded, "Can't wait." At 12:41 a.m. on January 6, Coker texted the friend photos of himself and other protestors who had gathered around Freedom Plaza in downtown D.C.

On the morning of January 6, Coker watched the former president's speech near the Ellipse, and then walked with the crowd in the direction of the Capitol building. Statement of Offense ¶ 9.


*Image 1: Coker walked with the crowd towards the U.S. Capitol.*

An open-source video shows that as Coker approached the Capitol building and stood near the Northwest Staircase, he had suited up for a riot by putting on protective eyewear, a black face mask that he pulled up over his nose, and a black sweatshirt hoodie over his head. Coker would wear this identity concealing outfit for the duration of the time that he was inside the Capitol on January 6. That video also showed police using crowd dispersal tactics, such as throwing

flashbangs grenades and deploying chemical irritants, to disburse the crowd and keep rioters away from the Capitol building.  Coker ignored these dispersal efforts and awaited his opportunity to get closer to the Capitol building.  While standing near the exterior of scaffolding by the Lower West Plaza,  he could see rioters climbing on the scaffolding near a vastly outnumbered group of police officers attempting to hold back rioters from ascending the Northwest Staircase.  *Id.*



*Image 2: Coker put on protective eyewear, and a face mask and hood, as he joined the mob outside the U.S. Capitol.*

Soon after rioters first breached the police line on the Northwest Staircase, Coker followed the rioters up the staircase and made his way quickly to the Upper West Terrace.  *Id.*  An open-source video shows that as other rioters around him paused to take selfies and take in the grandeur of the Capitol building, Coker headed directly to the Senate Wing Door.

4



*Image 3: Coker walked quickly to the Senate Wing Door and was among the first rioters to reach that Door.*

Coker was already at the Senate Wing Door as rioters used their fists to smash glass on the door and windows. Coker was feet away from Dominic Pezzola, a convicted Proud Boy, as Pezzola used a police shield to create one of the first breaches into the Capitol building.



*Image 4: Coker was feet away from the first breach of the U.S. Capitol building. [Sent. Exh. 1 at 00:14]*

After rioters broke one window and climbed through and then kicked opened the door from the inside, Coker entered the Capitol building at 2:13:47 p.m., roughly 30 seconds after it was first breached. *[Sent. Exh. 2 at 02:46]*



*Image 5: Coker watching rioters enter the Capitol seconds after the first breach.*



*Images 6: Coker was at the Senate Wing Door when its windows were first breached, and he was among the first rioters to enter the U.S. Capitol building [Sent. Exh. 2 at 02:46]*

Whereas most rioters entering the Capitol at 2:13 p.m. headed north in the direction of the Senate, Coker turned and headed south, and he was one of the first rioters to enter the Crypt at 2:14 p.m. Closed circuit video shows Coker speaking with police officers, who ordered him to leave the Crypt. The video also shows that Coker briefly departed then re-entered the Crypt as

6

part of a larger mob. He remained in the Crypt as the mob swelled and began to overwhelm and overrun police officers.

 

*Image 7 (left): Coker at the very front of a mob of rioters heading towards the Crypt.*
*Image 8 (right): Coker was one of the first rioters to enter the Crypt.*

Coker was part of the mob that overran the police line and he followed the mob out of the Crypt and into the Memorial Door Hallway, then walked to the Rotunda at 2:38 p.m., where he took photos with his phone.



*Image 9: Coker gathered with a large crowd of rioters in the Rotunda.*

After exiting the Rotunda, Coker walked with another mob of rioters up a staircase to the third floor, then down hallways of private office spaces. As the rioters walked through the corridors, they banged on doors and chanted "defend your Constitution, defend your liberty."

7

Meanwhile, the occupants of those offices barricaded themselves inside, fearful for their lives. See https://nypost.com/2021/01/07/capitol-staffers-shown-hiding-for-their-lives-during-siege/. Coker paused at a window in the corridor to give a thumbs up to rioters outside. *[Sent. Exh. 3, 00:50]*



*Image 10: Coker walked down halls of private office spaces as rioters chanted and banged on office doors. [Sent. Exh. 3, 00:00-00:50]*

Coker entered the Senate Gallery at approximately 2:46 p.m. Coker was in the Senate Gallery for roughly two minutes, and heard rioters chanting "Treason, treason!" During the two minutes, Coker looked around and spoke with others in the Gallery. *[Sent. Exh. 4, 01:30-01:40]*



*Image 11: Coker remained in the Senate Gallery for roughly two minutes.*

After exiting the Senate Gallery, Coker remained for several minutes near the Ohio Clock Corridor, where he and another rioter spoke with police officers and asked to proceed further down the hallway that police had blocked. Coker ultimately followed officers' orders to leave,

8

and walked down a set of stairs and out through the Senate Carriage Door at approximately 2:54 p.m. Coker was inside the U.S. Capitol for roughly 40 minutes on January 6.



*Image 12: Coker spoke at length with officers in the Ohio Clock Corridor*

After exiting the U.S. Capitol, Coker remained on the east front of Capitol grounds, where was on his phone, and watched as rioters jumped atop armored police vehicles.



*Image 13: Coker remained on Capitol grounds after exiting the Capitol building*

### III. The Charges and Plea Agreement

On July 10, 2023, the United States charged Coker by criminal complaint with violating 18 U.S.C. § 1752(a)(1), Entering and Remaining in a Restricted Building or Grounds; 18 U.S.C. § 1752(a)(2), Disorderly and Disruptive Conduct in a Restricted Building or Grounds; 40 U.S.C. § 5104(e)(2)(B), Entering and Remaining in the Gallery of Congress; 40 U.S.C. § 5104(e)(2)(D), Disorderly Conduct in a Capitol Building or Grounds; and 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating, or Picketing in a Capitol Building.

On July 18, 2023, Coker was arrested at his workplace in Toledo, Ohio. ECF No. 5. On October 12, 2023, the United States charged Coker by Information with those same offenses. ECF No. 12. By plea agreement, Coker pled guilty to Count Two, a violation of 18 U.S.C. § § 1752(a)(2). In the plea agreement, Coker agreed to pay $500 in restitution to the Architect of the Capitol. ECF 25 ¶ 12.

### IV. Statutory Penalties

Coker now faces a sentencing on a single count of violating 18 U.S.C. § 1752(a)(2). As noted by the plea agreement and the U.S. Probation Office, Coker faces up to twelve months of imprisonment and a fine of up to $100,000. He must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007). "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" for determining a defendant's sentence. *Id.* at 49. The United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") are "the product of

careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions" and are the "starting point and the initial benchmark" for sentencing. *Id.* at 49.

The government agrees with the Sentencing Guidelines calculation set forth in the PSR.

| | |
|---|---|
| Base Offense Level (U.S.S.G. §2A2.4) | +10 |
| Acceptance of Responsibility (USSG §3E1.1(a)) | -2 |
| Total Adjusted Offense Level | 8 |

*See* PSR at ¶¶ 28-38.

Recent amendments to the Sentencing Guidelines for 2023 include a new guideline, U.S.S.G. § 4C1.1, which provides for a two-level decrease in the offense level for offenders who have no criminal history points and who meet certain additional criteria. The Court should not apply § 4C1.1 here for the reason that Coker is a convicted felon and the Section does not apply to him.

The U.S. Probation Office calculated Coker's criminal history as a Category II. PSR at ¶ 52. Accordingly, the U.S. Probation Office calculated Coker's total adjusted offense level, after acceptance, at 8, and his corresponding Guidelines imprisonment range at 4 to 10 months. PSR at ¶ 106. Coker's plea agreement contains an agreed-upon Guidelines' calculation that mirrors the U.S. Probation Office's calculation. ECF 25 ¶ 5.

Coker filed an objection to the draft PSR, arguing that three criminal history points should not have been assessed under U.S.S.G § 4A1.1(a) for two of his prior North Carolina state convictions, designated 08 CRS 051147 and 08 CRS 051148. *See* PSR ¶ 44. One of the charges was for "insurance fraud," and the other was for "forgery of an instrument." *Id*. A third charge of "utter forged instrument" was dismissed. Coker argues that under U.S.S.G § 4A1.2(a)(2), the sentences for the two cases ran separately and neither sentence exceeded one year and one month.

11

U.S.S.G § 4A1.2(a)(2) states that prior sentences are always counted separately if the sentences were imposed for offenses that were separated by an intervening arrest.  If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day.  Prior sentences covered by (A) or (B) should be treated as a single sentence.  If consecutive sentences were imposed, the Court should use the aggregate sentence of imprisonment.

The PSR recites, and Coker does not dispute,  that case numbers 08 CRS 051147 and 08 CRS 051148 were consolidated for prosecution." PSR ¶ 44. The first charge alleged that Coker "presented a fraudulent computer generated certificate of liability insurance from Howard Brown Insurance Agency, Inc., to Tim and Brenda Brown … to secure a job contract for home improvement to the home of Tim and Brenda Brown, … knowing the policy was in fact fraudulent and no insurance existed." *Id.*  The second charge alleged that Coker "forge[d] one certificate of liability insurance from Howard Brown Agency, Inc., by scanning documents into a computer, altering personal information and printing Howard Brown's signature without the consent or knowledge of Howard Brown." *Id*.

Cabarrus County, North Carolina court records show that both offenses occurred on the same day (July 1, 2007) and had a joint trial date of May 18, 2009.  In the "plea arrangement" notes, a clerk notated both cases number and wrote that Coker "pled guilty to Insurance Fraud and Forgery of an Instrument.  State agrees to VD uttering charge.  State agrees to a suspended sentence in the presumptive range for each count. Both sentences run consecutively.  State agrees to 1 term of supervised probation with 6 months intensive."  Transcript of Plea, File Nos. 08 CRS 51147-9, at 3.

12

Because the two cases were consolidated and the sentences were imposed consecutively, U.S.S.G. § 4A1.2(a)(2) instructs that that for the purpose of applying § 4A1.1(a), the court should use the aggregate sentence of imprisonment. Application Note 2 further clarifies that the length of a sentence of imprisonment is the stated maximum, and criminal history points are based on the sentence pronounced, not the length of time actually served. In Coker's case, he was sentenced to 8 to 10 months of incarceration for case 08 CRS 051147 and 6 to 8 months for case 08 CRS 051148. Coker's aggregated sentence for the two offenses exceeded one year and one month, and the PSR properly assesses three criminal history points. PSR ¶ 52.

Here, while the Court must consider the § 3553 factors to fashion a just and appropriate sentence, the Guidelines unquestionably provide the most helpful benchmark. As this Court knows, the government has charged a considerable number of persons with crimes based on the January 6 riot. This includes hundreds of felonies and misdemeanors that will be subjected to Guidelines analysis. In order to reflect Congress's will—the same Congress that served as a backdrop to this criminal incursion—the Guidelines are a powerful driver of consistency and fairness.

## V.     Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of six months of incarceration and $500 in restitution.

### A. The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed a grave danger to our democracy. *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40 (TNM), 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021).

Coker's proximity to the initial breach of the U.S. Capitol building and his intrusion into the Senate Gallery are aggravating factors here. Coker stood feet away as rioters bashed in windows and then kicked the door open from the inside. Despite his close proximity to the savage physical attack on the Capitol building, Coker eagerly followed rioters inside. Acknowledging his planned unlawful conduct, he dressed for a riot, donning eyewear and face coverings to conceal his identity when he approached the Capitol. Coker made his way to the Senate Chambers at a pivotal moment when lawmakers should have been certifying the Electoral College votes. Coker's actions on January 6 displayed his eager willingness to follow behind a violent mob, and a cavalier disregard for this country's democratic institutions and rule of law.

### B. The History and Characteristics of Coker

Coker's extended criminal history clearly demonstrates his unwillingness to abide by the law. Coker sustained the following criminal 12 convictions, resulting in three criminal history points and a criminal history category of II.

- On April 4, 1997, Coker was arrested for simple possession of a Schedule VI Controlled Substance. On May 5, 1997, Coker was sentenced to 30 days of jail and 12 months of probation.

- On December 19, 1997, Coker was arrested for possession of .5 to 1.5 ounces of marijuana. On March 24, 1998, Coker was sentenced to 35 days of jail (suspended) and 12 months of probation.

- On March 31, 2008, Coker was arrested and charged with worthless checks. Coker paid a fine and restitution.

- On September 6, 2008, Coker was charged with breaking and entering. He was sentenced to 120 days of jail.

- On September 6, 2008, Coker was arrested and charged with Insurance Fraud and Forgery of Instrument > $100,000. Coker had forged a certificate of liability insurance and presented that fraudulent certificate to a customer. Coker was sentenced to a term of 8-10 months on one charge and 6-8 months on the second charge.

- On December 28, 2008, Coker was arrested in Salisbury, North Carolina and charged with trespass, injury to real property, and larceny. On January 1, 2009, Coker was sentenced to 120 days of confinement for each count and 18 months of probation.

- On December 30, 2008, Coker was charged with two counts of passing worthless checks. Coker was sentenced to 30 days of jail with 18 months of probation on count 1, and 30 days of jail, with 18 months of probation, on count 2.

- On December 30, 2008, Coker was charged with misdemeanor larceny and second degree trespass. Coker was sentenced to 120 days for each count (to run concurrently).

- On August 10, 2010, Coker was found guilty of possession of drug paraphernalia. The government does not have the sentencing disposition.

- On December 2, 2009, Coker was arrested in Rowan County, North Carolina and charged with attempted possession of a firearm by a felon. On March 17, 2010, Coker was sentenced to 10-12 months of confinement and 24 months of probation. On May 27, 2010, Coker's supervision was revoked. According to information obtained by the government, Coker was pawning firearms while being a convicted felon.

- On May 5, 2010, Coker was charged with injury to real property. According to the PSR, he was sentenced to 120 days of jail.

- On June 13, 2015, Coker was charged with disorderly conduct after being found in possession of a crack pipe and admitting to having used the pipe to smoke crack cocaine. Coker paid a fine.

While executing a search warrant on July 18, 2023 in furtherance of the investigation for this case, law enforcement officials found ammunition and multiple firearms in Coker's house,

located in Oregon, Ohio. On March 6, 2024, a federal grand jury in the Northern District of Ohio indicted Coker for attempted possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). *U.S. v. Joshua Curtis Coker*, 24-cr-80 (N.D. OH). While the charge in that case is pending, the circumstances reflect Coker's unwillingness to abide by the law, including a prohibition on his possession of firearms. And while the Court has the authority to consider the facts of Coker's unlawful gun possession when imposing a sentence here, the government respectfully requests that the Court expressly refrain from increasing Coker's sentence for that conduct and permit the court in the Northern District of Ohio to do so, assuming Coker is convicted. *See, e.g., United States v. Speed,* No. 22-cr-244 (TNM), May 8, 2023 Sent. Hrg. Tr. at 40 (sentencing defendant also convicted of firearms-related offenses in different district for January 6 conduct only).

According to the PSR, and as reflected in Coker's convictions for possession of drug paraphernalia, Coker has a lengthy history of drug addiction. PSR ¶¶ 65, 90-97. Coker also suffers from PTSD from a traumatic incident involving a firearm when Coker was 15 years-old and accidentally shot and killed his cousin. PSR ¶ 82. Despite this tragic event, Coker appears to this day to be disinclined to separate himself from the unlawful possession of firearms.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot.

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this

16

defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration.

*Specific Deterrence*

There is a strong need for specific deterrence in this case. While Coker expressed remorse to the Probation Office, his lengthy criminal history, including several offenses resulting in prison terms, suggest that Coker is unable to abide by the law. With a history of 12 criminal convictions, Coker should have achieved the wisdom and life experience to know that it would be unlawful to violently break windows and doors and then enter into the Capitol building. But that is exactly what Coker did. Kitted up in a facemask that hid his identity, Coker watched rioters overwhelm police by the Northwest Staircase. After walking up the staircase, he quickly made his way to the Senate Wing Door, where he stood just feet behind rioters who bashed in windows and made the first breaches into the Capitol building. Showing no respect for the law, Coker was hellbent on following them inside. He walked extensively throughout the Capitol building, eventually making his way to the Senate Gallery.

Although Coker has pleaded guilty and taken responsibility for his actions on January 6, those actions and his extensive criminal history demonstrate that he will not abide by the law in the future. A period of incarceration to achieve specific deterrence is needed in this case.

17

### E. The Need to Avoid Unwarranted Sentencing Disparities

This Court must sentence Coker and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: their participation in the January 6 riot.[1] The government submits that Coker's significant criminal history should also factor in heavily in his sentence.

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v. Kasey Hopkins*, 22-cr-317 (TSC), the defendant pleaded guilty to violating 40 U.S.C. § 5104(e)(2)(G), a petty offense. Like Coker, Hopkins entered sensitive spaces inside the Capitol building, the Parliamentarian's office suite and Senator Jeff Merkley's private hideaway office. Hopkins and Coker both have significant criminal histories and a demonstrated unwillingness to abide by the law. Whereas Coker has multiple felony convictions, Hopkins had a 2002 conviction for rape. Hopkins, unlike Coker, had social media in which he expressed hope for a coming "civil war." Coker's conduct on January 6 was worse than Hopkins' because Coker was part of the first breach of the Capitol building and made it all the way to the Senate Gallery. Judge Chutkan sentenced Hopkins to four months of incarceration.

In *United States v. Andrew Ericson*, 21-cr-506 (TNM), the defendant pleaded guilty to violating 40 U.S.C. § 5104(e)(2)(G). Similar to Coker, Ericson observed rioters overrun police

---

[1] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

18

and entered a sensitive location inside the U.S. Capitol, the Speaker's Conference Room. Both Erickson and Coker traveled extensively throughout the Capitol building. While inside the Speaker's Conference Room, Ericson posed for photos with his feet on top of a table. Coker has a lengthy criminal history, whereas Ericson's criminal history is comparatively minor. This Court sentenced Ericson to 20 days of incarceration to be served on consecutive weekends and 24 months of probation. Coker's conduct on January 6 was altogether more aggravated than Ericson's, because Coker was present at the initial breach of the Capitol building and made his way to the Senate Chamber when lawmakers should have been certifying the Electoral College votes.

In *United States v. Jared Cantrell*, 22-cr-121 (TNM), this Court convicted the defendant of violating 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. § 5104(e)(2)(G) following a bench trial. Both Coker and Cantrell observed broken police barriers and observed chaos and physical destruction of property. Both wore a mask and eyewear to hide their identities. Coker's criminal history is more significant: he has 6 criminal convictions, with several resulting in prison terms, Cantrell had arrests but no convictions. While Coker, unlike Cantrell, has expressed remorse, Coker's conduct on January 6 was worse than Cantrell's because Coker remained inside the Capitol building for 40 minutes, while Cantrell was inside for roughly 10. Coker was at the Senate Wing Door during the first breach, and he also made his way to a sensitive location, the Senate Gallery. This Court sentenced Cantrell to 6 months of incarceration and four months of home incarceration.

**VI.     Conclusion**

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Coker to seven months of incarceration, followed by one year of supervised release, 60 hours of community service, and $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Coker's liberty as a consequence of his behavior.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/ Melanie Krebs-Pilotti*
Melanie Krebs-Pilotti
Trial Attorney- Antitrust Division
Detailed to USAO-DC
United States Department of Justice
Cal. Bar. No. 241484
Washington, D.C. 20530
Mobile: (202) 870-7457
Melanie.krebs-pilotti2@usdoj.gov